# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM O. FLICK, JR., <br><br> Plaintiff, <br> v. <br><br> CHARTWELL ADVISORY GROUP LTD. et al., <br><br> Defendants. | CIVIL ACTION <br> NO. 14-06953 |

PAPPERT, J.                                                                                                                                                               JULY 2, 2015

## MEMORANDUM

Plaintiff William O. Flick, Jr. ("Flick") brings this action seeking to recover monies owed to him based on promises allegedly made before and during his employment with Defendant Chartwell Advisory Group Ltd. ("Chartwell"). Defendants Chartwell, Lawrence Kent, Maurice Kent, and Lawrence Palmer ("Palmer") (collectively "Chartwell Defendants") move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion is granted with leave to amend the complaint consistent with this opinion.

### *Factual and Procedural Background*

Flick worked at Chartwell from 1992 through 1999. (Compl. ¶ 18, ECF No. 1.) While Flick was employed elsewhere, Defendant Stephen Deviney ("Deviney"), Chartwell's then president, recruited Flick to return to the company. (*Id.* ¶¶ 19, 20.) Flick agreed to return to Chartwell as a vice president after Deviney enticed him with a number of promises, including a $150,000 yearly salary (with at least $200,000 total compensation per year guaranteed), ten percent of net profits, ten percent of any net proceeds from a group of cases being litigated in Nevada, and a three percent share of the company. (*Id.* ¶ 21.) Deviney made these promises to Flick on behalf of Chartwell and personally guaranteed that payment would be made. (*Id.* ¶ 22.) Flick worked for Chartwell from

2004 through 2009 in reliance on Deviney's promises, and declined several other employment opportunities that would have paid $300,000 to $400,000 per year. (*Id.* ¶¶ 23, 51.) During this period, Deviney assured Flick that he would receive the payments he was promised and Deviney told Flick that he was maintaining a log of the amounts owed to Flick based on the yearly profits. (*Id.* ¶¶ 24-25.) The net profits for one year were allegedly almost $700,000 and Flick was assured he would receive all amounts due to him. (*Id.* ¶ 25.) Deviney again affirmed these promises in January 2009[1], albeit while informing Flick that Flick's annual salary would be reduced from $175,000 to $75,000 due to financial requirements imposed by Deviney's partners. (*Id.* ¶ 26.) Despite the salary cut, Deviney reminded Flick that he was owed ten percent of the net profits and ten percent of the Nevada litigation. (*Id.*) These benefits were to be paid to Flick whether or not he remained with Chartwell. (*Id.* ¶ 27.)

In January 2010, Flick signed an employment agreement with Chartwell that outlined his compensation for services from December 19, 2009 forward. (*Id.* ¶ 28.) Soon after executing the contract, Flick and Deviney executed a separate one page contract memorializing the promises regarding Flick's share of the Nevada litigation proceeds and his share in the net profits. (*Id.* ¶ 29.) Both copies of this second contract "later disappeared from Chartwell's offices under suspicious circumstances while Mr. Palmer was physically present in Chartwell's offices." (*Id.* ¶ 29.) Deviney again recognized his promises to Flick via an email and a handwritten note sent to Flick on two separate occasions after they executed the January 2010 contract. (*Id.* ¶ 30.)

Deviney "abruptly" left Chartwell in 2013. (*Id.* ¶ 37.) After Deviney's departure, Flick sought assurances from Palmer and others that Chartwell would honor the promises Deviney made to Flick. (*Id.* ¶ 38.) Palmer and Lawrence Kent repeatedly implied that Chartwell would honor the promises, but Flick received no response to his request for written assurances to that effect. (*Id.* ¶¶

---

[1] In his sur-reply, filed without leave in violation of the Court's policies and procedures, Flick states that the complaint contains a "typographical error" and corrects the date to January 2010. (Pl.'s Sur-Reply 3 n.2, ECF No. 16.)

39, 40.) Palmer and Lawrence Kent tried to renegotiate the deal Deviney and Chartwell had reached with Flick on more than one occasion. (*Id.* ¶ 41.) In May 2014, Lawrence Kent advised Flick that Chartwell was discontinuing its sales operation and terminated Flick's employment. (*Id.* ¶ 47.)

Chartwell also administered a 401k plan for its employees. (*See id.* ¶ 12.) Chartwell's Employee Handbook stated that Chartwell would match employees' 401k plan contributions, if certain requirements were met. (*Id.* ¶ 33.) Flick and other employees were "repeatedly told that arrangements were being made to provide these matching payments, but no such payments have been credited to Mr. Flick's 401k account to date." (*Id.* ¶ 34.)

Flick filed his complaint on December 3, 2014, alleging claims pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and Pennsylvania common law breach of contract, promissory estoppel, fraud, fraudulent inducement, and unjust enrichment claims as well as a violation of the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq*. The Court has original subject matter jurisdiction over the alleged ERISA claims pursuant to 28 U.S.C. § 1331. Flick alleged that the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims.

The Chartwell Defendants moved to dismiss the complaint, or in the alternative for summary judgment, on February 5, 2015. (ECF No. 7.) Flick filed his opposition on February 23, 2015, (ECF No. 11), and the Chartwell Defendants replied on March 2, 2015. (ECF No. 12.) Defendant Deviney answered the complaint and filed counterclaims for breach of contract and set-off against Flick as well as cross-claims against the Chartwell Defendants for indemnification, contribution and reimbursement. (Deviney Am. Answer, ECF No. 23.) The Chartwell Defendants answered Deviney's cross-claims and asserted cross-claims of their own against Deviney for breach

3

of fiduciary duty and contribution and indemnification. (Chartwell Defs. Answer, ECF No. 25.) The Court held oral argument on the Chartwell Defendants' motion to dismiss on June 18, 2015.

*<u>Legal Standard</u>*

To withstand a motion to dismiss, the complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 210-11 (citation omitted). A motion to dismiss will be granted if the factual allegations in the complaint are insufficient "to raise the right of relief above the speculative level." *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"When reviewing a motion to dismiss, '[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But the Court "need not credit a plaintiff's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.* 132 F.3d 902, 906 (3d Cir. 1997) (citation omitted).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation omitted). Additionally, "[a] document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Because the Court considers only Flick's allegations in the complaint and the

language of the Employee Handbook, which is the basis for Flick's ERISA claims, the Court need not convert the Chartwell Defendants' motion into one for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If, on motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

*Discussion*

The Chartwell Defendants move to dismiss Flick's ERISA claims contained in Counts I-III, contending that Flick's reliance on the language of the Employee Handbook, rather than the language of the summary plan description, does not establish a right to matching contributions actionable under ERISA and that Chartwell acted in accordance with the discretionary language in the summary plan description. The Court agrees that Flick has not stated claims under ERISA, though in part for reasons other than those articulated by the Chartwell Defendants.

*Count I—Violations of Section 502(a)(1)(B)[2]*

Flick contends that he is entitled to "the present value of the 401k matching payments for 2004-2012 that Chartwell failed to make." (Compl. ¶ 52.) "A civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the *terms of his plan* . . . ." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). To seek relief under Section 502(a)(1)(B), a plaintiff "must demonstrate that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006); *see also Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 296 (3d Cir. 2014)

---

[2] It is well-settled "that persons claiming plan benefits must generally 'exhaust their administrative remedies before seeking judicial relief.'" *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 280 (3d Cir. 2007) (quoting *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir. 1990)). Flick stated that he "has exhausted any available administrative remedies for his claims or is excused from doing so." (Compl. ¶ 69.) When pressed at oral argument, Flick's counsel could not articulate the administrative remedies available to Flick nor could he assure the Court that Flick had exhausted those remedies. (Hr'g Tr. 43.) A plaintiff's failure to exhaust administrative remedies, however, is not a jurisdictional pre-requisite. *Metro. Life Ins. Co.*, 501 F.3d at 280. Accordingly, the Court considers Flick's claim despite his apparent failure to undertake the appropriate procedural steps.

5

("Claims involving denial of benefits or improper processing of benefits require interpreting what benefits are due under the plan. . . . [T]he claims explicitly require reference to the plan and what it covers . . .").

Here, there are no allegations in the complaint describing *any* benefits to which Flick is entitled pursuant to an ERISA *plan*. *See Cranston v. PJM Interconnection LLC*, No. 13-cv-04916, 2014 WL 5503151, at *7 (E.D. Pa. Oct. 31, 2014) ("It is the terms of the Plan document that control and limit the bounds of the Court's analysis in Section 502(a)(1)(B) claims."). Nor has Flick relied upon language in a summary plan description to describe a right to matching contributions established by the plan. *Accord Bd. of Trs. of the Nat. Elevator Indus. Health Benefit Plan v. McLaughlin*, 590 F. App'x 154, 156 n.1 (3d Cir. 2014) ("The parties cite to language in the Summary Plan Description as the language of the Plan. As the Supreme Court has recognized, statements in a summary plan description 'provide communications with beneficiaries *about* the plan, but . . . do not themselves constitute the terms of the plan.' Because the parties have consistently treated this language as if it came from the Plan, however, we may do so as well.") (citations omitted).[3]

Flick premised his claim exclusively on the terms of the Employee Handbook, which he now concedes is not a summary plan description. (Pl.'s Opp'n Mot. Dismiss 7-8.) Because the Employee Handbook is not the plan or the summary plan description, its language does not describe plan benefits that are enforceable under ERISA. *Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1316-18 (3d Cir. 1991) (reversing district court and holding that the plaintiff could not recover under Section 502(a)(1)(B) for benefits allegedly due pursuant to the language of a

---

[3] Though a summary plan description is only a vehicle by which information about the plan is communicated, *Cigna Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011), plaintiffs may cite to the language of summary plan descriptions to demonstrate the terms of the plan if the summary language accurately describes the plan's terms. *See, e.g.*, *Conn. General Life Ins. Co. v. Roseland Ambulatory Center LLC*, No. 12-cv-05941, 2013 WL 5354216, at *2-3 (D.N.J. Sept. 24, 2013). When there is a conflict, however, the language of the summary plan description may not be enforced as the terms of the plan. *Cigna Corp.*, 131 S. Ct. at 1877.

brochure); *Saltzman v. Independence Blue Cross*, 634 F. Supp. 2d 538, 547 (E.D. Pa. 2009) ("Where a plaintiff brings a [Section 502(a)(1)(B)] claim, it must be based on the 'terms' codified in 'plan' documents."). Accordingly, Flick has not plausibly alleged that he had a legally enforceable right to matching contributions, and he has not stated a claim for benefits pursuant to Section 502(a)(1)(B).

*Count II—Breach of Fiduciary Duty*

The Chartwell Defendants contend here that Chartwell's failure to provide discretionary matching contributions did not breach its fiduciary duty to Flick. (Defs.' Mot. Dismiss 7.) Flick's claim, however, is based on Chartwell's misrepresentations regarding its intent to match, not its failure to do so.[4] (*See* Compl. ¶¶ 73-76.) Nonetheless, Flick failed to state a breach of fiduciary duty claim.

"To allege and prove a breach of fiduciary duty for misrepresentations, a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation." *Burstein v. Ret. Account Plan for Emps. of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 384 (3d Cir. 2003). It is no surprise that "lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA." *Variety Corp. v. Howe*, 516 U.S. 489, 506 (1996) (citations omitted) (holding that an "intentional misrepresentation" breached the fiduciary duty owed under ERISA). Flick's allegations, taken as true, plausibly establish that Chartwell, acting as plan fiduciary, breached its fiduciary duty by misrepresenting the company's intent to

---

[4] Flick asserts that Chartwell failed to provide him with a summary plan description and this suggests an independent breach of fiduciary duty claim. (Pl.'s Opp'n Mot. Dismiss 9 n.2.) Flick has not alleged this theory in his complaint, and "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commw. of Pa.* ex rel. *Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

7

match a percentage of its employees' 401k contributions.  *See In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 57 F.3d 1255, 1264 (3d Cir. 1995) ("Our decisions in *Bixler, Fischer, Curcio* and *Smith* firmly establish that when a plan administrator affirmatively misrepresents the terms of a plan or fails to provide information when it knows that its failure to do so might cause harm, the plan administrator has breached its fiduciary duty to individual plan participants and beneficiaries.").

Nevertheless, ERISA requires a plaintiff to show that the fiduciary's breach of its duty was a proximate cause of plaintiff's injury.  *See Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 424 (3d Cir. 2013); *see also Shook v. Avaya, Inc.*, 625 F.3d 69, 73 (3d Cir. 2010) ("In demonstrating sufficient reliance, the plaintiff must have taken some action as a result of the misrepresentation; the mere expectation of continued benefits is not enough.").  Flick alleged that the Employee Handbook "promised Chartwell employees that if requirements were met, the Company would make matching 401k contributions to a 401k plan," and he was "repeatedly told that arrangements were being made to provide these matching payments."  (Compl. ¶¶ 33-34.)  The 2006 Employee Handbook[5], which Flick attached to his opposition to Defendants' motion to dismiss, states: "Chartwell adds to the employee's contribution amount by 25% of the first 6% that the employee saves."  (Pl.'s Opp'n Mot. Dismiss, Ex. D.)  Flick's complaint never alleged that he contributed to his 401k.  Thus, even if he was entitled to a 25% matching contribution for the first 6% he saved, he has not alleged that he satisfied the precondition necessary to receive matching contributions.[6]  From these allegations, it cannot be inferred that Flick was injured as a result of the alleged misrepresentations.  This claim is accordingly dismissed.

---

[5]    Flick also attached the 2013 Employee Handbook to his opposition to Defendants' motion to dismiss.  His claim for matching contributions, however, spans the period of 2004 through 2012.  (Compl. ¶ 52.)

[6]    At oral argument, Flick's counsel stated that Flick had made some contributions to his 401k plan.  Counsel could not, however, identify the time period of those contributions or the how regularly the contributions were made.  (Hr'g Tr. 37-38.)  In any event, this allegation is not part of the complaint.

8

*Count III—Violation of Section 510*

The Chartwell Defendants seek dismissal of this count on the grounds that "Chartwell cannot have interfered with any rights to the 401(k) plan as long as it was acting within the scope of its powers as described by the SPD. Since it had the discretion to stop making payment, it was acting within the scope it authority." (Defs.' Mot. Dismiss 7.) The Court addresses a pleading deficiency inherently raised by this argument.

It is "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act." 29 U.S.C. § 1140. Flick has not alleged that Chartwell "discharge[d], fine[d], suspend[ed], expel[ed], [or] discipline[d]" him to avoid contributing to his 401k plan nor has he alleged that Chartwell discriminated against him in any way. The alleged interference occurred when Chartwell "wrongfully misrepresent[ed] to Mr. Flick its intentions with respect to 401k Plan matching deposits." (Compl. ¶ 80). Flick cannot state a claim in the absence of an allegation that Chartwell engaged in some conduct prohibited by Section 510. *See DiFederico v. Rolm Co.*, 201 F.3d 200, 204 (3d Cir. 2000) ("Section 510 of ERISA prohibits 'employers from discharging or harassing employees in order to keep them from obtaining [employee] benefits.'") (quoting *DeWitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 522 (3d Cir. 1997)); *Lafata v. Raytheon, Co.*, 147 F. App'x 258, 263 (3d Cir. 2005) ("[T]he defendant must have engaged in an act prohibited by § 510."). This claim is dismissed.

*Count IV—Equitable Estoppel*

Flick also seeks to recover the matching contributions he is allegedly owed under a theory of equitable estoppel. The Chartwell Defendants move to dismiss this claim contending that Flick failed to allege the existence of extraordinary circumstances.

9

Section 502(a)(3) allows a participant to "obtain . . . appropriate equitable relief . . . to redress [ERISA] violations or . . . to enforce any provision of [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3). A plaintiff may assert a claim for "appropriate equitable relief" based on a theory of equitable estoppel. *Pell v. E.I. DuPont de Nemours & Co.*, 539 F.3d 292, 300 (3d Cir. 2008). "To succeed under this theory of relief, an ERISA plaintiff must establish (1) a material representation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances." *Id.* (quoting *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3d Cir. 1994)). The plaintiff bears the burden of proof on each element of an estoppel claim. *Kurz v. Phila. Elec. Co.*, 96 F.3d 1544, 1555 (3d Cir. 1996).

Though the Third Circuit has never defined extraordinary circumstances, it has held that they may "arise where there are 'affirmative acts of fraud,' where there is a 'network of misrepresentations . . . over an extended course of dealing,' or where particular plaintiffs are especially vulnerable." *Id.* at 303-04 (quoting *Kurz*, 96 F.3d at 1553). The Third Circuit has, however, "consistently rejected estoppel claims based on simple ERISA reporting errors or disclosure violations, such as a variation between a plan summary and the plan itself, or an omission in the disclosure documents." *Kurz*, 96 F.3d at 1553.

Flick argues that the allegation that "Chartwell and Deviney repeatedly misrepresented to him over the course of 2004 through 2012, that they were making matching 401(k) payments when in fact they were not" describes extraordinary circumstances like those found by the Third Circuit in *Pell*.[7] (Pl.'s Opp'n Mot. Dismiss 10.) *Pell* does not, however, establish that allegations of repeated misrepresentations alone amount to extraordinary circumstances. In that case, Pell had inquired,

---

[7] Flick's description does not accurately characterize the allegations in the complaint. The complaint alleged that during the period of 2004 through 2012, Chartwell's Employee Handbook provided that the company would make 401k matching contributions if requirements were met, (Compl. ¶ 33), and Flick was "repeatedly told" that arrangements were being made to provide these matching payments. (*Id*. ¶ 34.) Despite these statements, no such payments were ever credited to Flick's account. (*Id.*)

over a period of approximately eight years, about his adjusted date of service (the date from which his pension was to be calculated), and received five confirmations from DuPont that the date was February 10, 1971. *Pell*, 539 F.3d at 298. When Pell retired, DuPont calculated his adjusted date of service as November 1, 1975. *Id.* at 299. Based on these facts, the Third Circuit held that "DuPont's repeated affirmative misrepresentations, combined with Pell's diligence, demonstrate that there are extraordinary circumstances." *Id.* at 304-05. Unlike Pell, Flick alleged no facts suggesting that he "was 'diligent' and engaged in 'persistent questioning' about the significant benefits at stake."[8] *Id.* at 304. Flick has not plausibly alleged the existence of extraordinary circumstances warranting relief under a theory of equitable estoppel. This claim is dismissed.

Flick also pled Counts II and IV against Deviney. These claims suffer from the same defects described above. As a result, these counts are also dismissed against Deviney. *See Silverstein v. Percudani*, 422 F. Supp. 2d 468, 473 (M.D. Pa. 2006) (dismissing claim *sua sponte* against defendant who had neither moved to dismiss nor answered because the claim suffered the same defects raised in moving defendants' motion to dismiss); *Romanelli v. Deweese*, No. 10-cv-1434, 2011 WL 2149857, at *8 (M.D. Pa. June 1, 2011) (dismissing claims *sua sponte* against non-moving defendants because the claims against the non-moving defendants suffered the same defects raised in the moving parties' motions to dismiss); *Sullivan v. Dellots, Inc.*, No. 97-cv-5457, 1997 WL 778976, at *7 (E.D. Pa. Dec. 17, 1997) (same). Furthermore, because the ERISA claims against Deviney have been dismissed, Deviney's derivative ERISA cross-claims seeking indemnification and reimbursement against Chartwell and indemnification and contribution against Chartwell and Palmer are also dismissed. *See Gendelman v. Blumenstein*, No. 12-cv-6976, 2015 WL 3489883, at *8 (D.N.J. June 2, 2015) (granting summary judgment on behalf of one defendant

---

[8] At oral argument, Flick's counsel stated that Flick was aware that Chartwell promised to make matching contributions and he was aware that no matching contributions were being made. (Hr'g Tr. 58.) Counsel also believed that "he was following up with his supervisor saying when are these going to be made." (*Id.*) These allegations, however, were not pled.

11

and *sua sponte* dismissing defendant's derivative cross-claims for contribution and indemnification).

Flick tacks a request for leave to amend "to correct any deficiencies identified in his pleading" to the end of his brief in opposition to the Chartwell Defendant's motion to dismiss. (Pl.'s Opp'n Mot. Dismiss 25.) Flick was entitled to amend his complaint once "as a matter of course" within twenty-one days after service of the motion to dismiss. Fed. R. Civ. P. 15(a)(1)(b). Flick did not exercise this right in response to the Chartwell Defendants' motion, and he now may amend only with the Court's leave. Fed. R. Civ. P. 15(a)(2).

"The Court should freely give leave [to amend] when justice so requires." *Id.* "In non-civil rights cases, the settled rule is that properly requesting leave to amend a complaint requires submitting a draft amended complaint." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252-53 (3d Cir. 2007). Failure to follow this procedure is typically fatal to a request for leave to amend. *Id.* at 253. In this case, however, Flick's counsel articulated facts at oral argument that may remedy the deficiencies identified in Flick's ERISA claims. Flick is accordingly provided one more opportunity to plead the claims contained in Counts I-IV of his complaint. *See U.S. v. Hougham*, 364 U.S. 310, 317 (1960) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."). If Flick elects to re-plead the ERISA claims, he is instructed to clarify what equitable relief he seeks pursuant to ERISA § 502(a)(3).

*Supplemental Jurisdiction*

Flick's remaining claims, Deviney's counterclaims and remaining cross-claims, and the Chartwell Defendants' cross-claims all arise under Pennsylvania law.[9] The parties contend that the Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367. (Compl. ¶ 3; Deviney Am. Answer ¶¶ 144, 174; Chartwell Defs. Answer ¶ 6.) Though the parties have not challenged the Court's supplemental jurisdiction, the district courts have "a duty to review their own jurisdiction, sua sponte if necessary." *Smith v. Zeeky Corp.*, No. 09-cv-4253, 2010 WL 1878716, at *4 (E.D. Pa. May 7, 2010) (citations omitted).

"Congress has authorized district courts to exercise jurisdiction supplemental to their federal question jurisdiction in 28 U.S.C. § 1367." *Lyons v. Whisman*, 45 F.3d 758, 758 (3d Cir. 1995). Section 1367(a) states:

> "Except as provided in subsections (b) and (c) . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

For the Court to exercise supplemental jurisdiction, the state and federal claims must "derive from a common nucleus of operative facts" and the claims must be "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *Lyons*, 45 F.3d at 760 (3d Cir. 1995) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

The test to determine whether claims arise from a "common nucleus of operative facts" is "not self-evident" and "fact specific." *Lyons*, 45 F.3d at 761. The Third Circuit has identified two extremes in the supplemental jurisdiction analysis: "district courts will exercise supplemental jurisdiction if the federal and state claims are merely alternative legal theories of recovery based on

---

[9] Flick has alleged that both he and Chartwell are citizens of Pennsylvania, (Compl. ¶¶ 5, 6) and failed to allege the citizenship of Defendants Deviney, Lawrence Kent, Maurice Kent, or Palmer. Deviney alleged that both he and Flick are citizens of Pennsylvania. (Deviney Am. Answer ¶¶ 142-43.) The Chartwell Defendants allege that Lawrence and Maurice Kent are citizens of Florida and Palmer is a citizen of Pennsylvania. (Chartwell Defs. Answer ¶¶ 2-4.) Accordingly, the Court cannot exercise diversity jurisdiction. *See* 28 U.S.C. § 1332.

the same acts" and the courts "have refused to exercise supplemental jurisdiction over state claims totally unrelated to a cause of action under federal law." *Id.* at 761 (citations omitted). The Third Circuit, however, saw "no need to define how close the nexus between the federal and state claims must be to support the exercise of supplemental jurisdiction" for cases that fall within the two extremes. *Id.* at 761-62. Nonetheless, when the only link between the federal and the state law claims "is the general employer-employee relationship between the parties" there is so little overlap "that there is no 'common nucleus of operative fact' justifying supplemental jurisdiction over the state law claims." *Id.* at 762-63.

There is no relationship between Flick's federal ERISA claims and his state law claims other than the fact they all arose in the context of his employment with Chartwell. Flick's ERISA claims involve very narrow factual issues regarding Chartwell's obligations to provide matching contributions and its alleged failure to do so, as well as the application of ERISA law. The state claims are based on entirely distinct contractual relationships between Flick and some of the Defendants. These claims raise a substantial number of issues unrelated to the adjudication of the ERISA claims, and will have very little, if any, evidentiary overlap with the ERISA claims. All defendants' cross-claims and Deviney's counterclaims are likewise based on separate contractual and fiduciary relationships between the parties. They too are distinct from Flick's ERISA claims. Thus, the state law claims cannot be said to arise under a "common nucleus of operative fact" with the ERISA claims, nor would it be expected that the state law claims would be tried in the same proceeding as the ERISA claims. There is therefore no basis for supplemental jurisdiction over Flick's state law claims, Deviney's counterclaims and state law cross-claims, and the Chartwell Defendants' cross-claims. These claims are accordingly dismissed.[10]

---

[10] The parties are free to reassert their state law claims in state court, and may explore their transfer right under 42 Pa. C.S.A. § 5103(b) as necessary.

*<u>Conclusion</u>*

For the foregoing reasons, the Chartwell Defendants' motion to dismiss is granted. Flick's ERISA claims alleged in Counts I-IV as well as Deviney's contribution, indemnification, and reimbursement ERISA cross-claims are dismissed without prejudice. The Court lacks subject matter jurisdiction over parties' remaining state law claims.

An appropriate order follows.

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
